JAMES KINSEY, Treasurer, etc., Respondent v. ABRAM W. LEGGETT, et al., Appellants.

In an action to recover possession of a quantity of cheese it appeared that prior to October, 1870, defendant A. and the defendants L. had been engaged in purchasing cheese on joint account; A. making the purchases and shipping to the L.s at New York. A. had made various purchases of the D. C. C. F. Co. (of which company plaintiff was treasurer), always paying cash. In October, 1870, A. contracted with plaintiff for the purchase of the cheese in question, the negotiations being conducted in the same manner as before; plaintiff understanding the purchase to be on the same account, and that the cheese was to be similarly consigned. It was delivered at a railroad depot and shipped, A. falsely representing

that the money was on the way from New York to pay therefor; nothing was said on the subject of a credit. A. also by false representations to the depot agent, and without the knowledge of plaintiff, procured the cheese to be shipped to the defendants L. in the name of G. W. M. & Co., as owners and consignors, a firm in which A. was a partner, which was at the time insolvent, and whose business was nearly closed; it did not appear that plaintiff had any knowledge of the existence of such firm. On receipt of a telegram from G. W. M. & Co., sent before the cheese was shipped, announcing shipment, the L.s advanced $5,000 thereon. The cheese was received by the L.s, who, when it was demanded by plaintiff, repudiated any interest in the purchase, and claimed that the sale was to G. W. M. & Co., for whom they had sold it, and to whom they had made advances thereon. *Held,* that the L.s were estopped from claiming by virtue of a sale to them on credit, and as between the parties, plaintiff was the owner, unless the sale was to G. W. M. & Co.; and that upon this question the evidence fully justified a finding for plaintiff.

Also, *held,* that the evidence justified a finding that the sale was for cash, and that plaintiff did not intend to part with the title until the purchase-price was paid; also that the evidence was sufficient to show the delivery was obtained by fraud, and so that plaintiff was entitled to rescind and to reclaim the property.

The L.s claimed that they had sold and delivered the cheese to S., a *bona fide* purchaser, before demand. They had advised S. that they had purchased for him, the cheese was deposited in a warehouse containing other cheese belonging to S., but the receipts therefor and the insurance were in the name of defendants. The purchase was not entered in defendants' books until after the demand, and S. had paid nothing on account. The L.s also executed the required security and retook the cheese from the sheriff; *held,* that the evidence failed to show any transfer of title to S.

Also, *held,* that the L.s could claim no lien for advances to G. W. M. & Co.

Also, *held,* that defendants were entitled to no allowance and could claim no lien on account of freight.

The "Factor's act" (chap. 179, Laws of 1831), has no application to such case. It only applies where a shipment of property is made with the consent of the real owner in the name of another, thus conferring upon the latter apparent ownership and right of control, and where innocent parties, on the faith of the evidence thus furnished, have made advances on the property.

(Argued November 21, 1877; decided December 11, 1877.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict and affirming an order denying a motion for a new trial.

This was an action of replevin, brought by plaintiff as treasurer of the Darien Centre Cheese Factory Company, to recover possession of a quantity of cheese.

The facts appearing upon the trial were, in substance, as follows :

For several years prior to October, 1870, the defendants, Abram W. and Frederick W. Leggett, and defendant, Andrews, had been engaged in the purchase of cheese upon joint account in Western New York, Andrews, who resided in Wyoming county, making the purchases, and consigning the property to the other defendants, who were commission merchants doing business in New York city, and who attended to the marketing thereof. During this period they had made several purchases of the plaintiff, the business having been transacted in the manner above stated. Andrews had never made any purchase of cheese of the plaintiff for any other party or upon any other account. All of these sales had been for cash—no credit having been, in any instance, required or given. About the middle of October, 187 ', Andrews called upon the plaintiff and began negotiations for the purchase of the cheese in controversy in this action, which, within a few days thereafter, culminated in an agreement between the plaintiff and Andrews on the subject. In making this purchase, the negotiations between the parties were carried on in the same manner as on previous purchases. The plaintiff understood that he was making the sale to the defendants—no other parties were mentioned. Nor had he any knowledge whatever of any intention to deliver it to any other party. He had knowledge as to the form of previous consignments, and understood that this was to be similarly consigned. Such was, in fact, the express direction given to the station agent by Andrews, in the presence of the plaintiff's agent. The contrary direction subsequenty given was in the absence of the plaintiff or any one representing him, and never came to his knowledge until after the cheese had arrived in the city of New York. The cheese was loaded on the cars of the Erie Railway Company at Darien station on

the 12th day of November, 1870, and left on a train passing that station on the afternoon or evening of the last named day. At the time of such shipment Andrews represented that the money to pay for it was then actually on its way from the other defendants in New York city This representation was in fact untrue; Andrews, by false representations to the station agent, procured the cheese to be shipped and billed in the name of G. W. Morgan & Co., a firm of which Andrews was a partner, which was at the time insolvent, and whose business was nearly closed. It did not appear that plaintiff knew of the existence of the firm, and he did not know of the method of shipment. Before shipment of the cheese the Leggetts, on receipt of a telegram stating that it had been shipped by Morgan & Co. to them, advanced to said firm $5,000. The cheese was received by the Leggetts and stored, they taking the warehouse receipts and insuring it in their own name. On demand being made on behalf of plaintiff's company of the Leggetts, they repudiated any purchase thereof from plaintiff by them or on their account, but claimed that it was purchased by Morgan & Co., and shipped to them for sale; that they had advanced $5,000 thereon to Morgan & Co., and had sold it for them. The Leggetts had, in fact, advised one Seabury, who had other cheese in the warehouse where this cheese was stored, that they had purchased it on his account, but they made no entry of the sale until after the demand, and Seabury had paid nothing on account thereof, nor had he received the warehouse receipts. The Leggetts gave the required security, and retook the cheese from the sheriff.

Further facts appear in the opinion.

*E. C. Sprague*, for appellants. The court erred in allowing Kinsey to testify that he did not intend to deliver the cheese to defendants without payment of the purchase-price. *Waugh* v. *Fielding*, 48 N. Y., 681; *Cowdry* v. *Coit*, 44 id., 382; *Ballard* v. *Lockwood*, 1 Daly, 158; *Weber* v. *Kings-*

*land,* 8 Bos., 415; *Rich* v. *Jackway,* 18 Barb., 357; *Learned* v. *Ryder,* 61 id., 552.) The motion for a nonsuit should have been granted, because defendants were entitled to a lien for the advance they had made on the property. (*Williamson* v. *Rupell,* 39 Conn., 406; *Blanchard* v. *Campbell,* 65 Barb., 288; *Smith* v. *Lyres,* 5 N. Y., 46; *Ash* v. *Putnam,* 1 Hill, 307; *Murray* v. *Walsh,* 8 Cow., 238; *Hoffman* v. *Carew,* 22 Wend., 318; *Root* v. *French,* 13 id., 540; *Blavers* v. *Lane,* 6 Duer, 232; *Haskins* v. *Warren,* 115 Mass., 514.)

*M. H. Peck,* for respondent. There having been no sale of the cheese, the title to it remained in plaintiff, and he could take it wherever he could find it. (*Tripp* v. *Culver,* 2 Hun, 511; *Fullerton* v. *Dalton,* 58 Barb., 236; *Ballard* v. *Burgett,* 40 N. Y., 314; *Maynard* v. *Anderson,* 54 id., 641; *Spraights* v. *Hawley,* 39 id., 441; *Latimer* v. *Wheeler,* 1 Keyes, 468; *Howland* v. *Woodruff,* 60 N. Y., 73; *First Nat. Bk. of Toledo* v. *Shaw,* 61 id., 283.) The action was properly brought in plaintiff's name. (Code, § 113; *Considerant* v. *Brisbane,* 22 N. Y., 389; *Poor* v. *Guilford,* 10 id., 273; *Davis* v. *Reynolds,* 48 How. Pr., 210.) Defendants were not entitled to any deduction on account of freight (*Silsbury* v. *McCoon,* 3 N. Y., 379; *Rockwell* v. *Saunders,* 19 Barb., 473–483; *Rice* v. *Hollenbeck,* id., 664; *Hyde* v. *Cookson,* 21 id., 104; *Holmes* v. *Davis,* id., 275.)

MILLER, J. There was evidence upon the trial of this action tending to prove that the plaintiff understood that the purchase of the cheese was to be made by Andrews on joint account with the defendants, the Messrs. Leggett. Similar purchases had been made in the same manner on previous occasions, and there was strong ground for claiming that the plaintiff had reason to suppose that this one was of the same character. The defendants, the Messrs. Leggett, however, when called upon by the plaintiff in New York in regard to the cheese, and when it was claimed by him, and possession

of the same demanded, repudiated the idea that the purchase was made by them, or that they had any interest in the purchase ; and they then insisted that the cheese was sold to George W. Morgan & Co., for whom they claimed they had sold it, and made advances to Morgan & Co. on that account. The judge in his charge to the jury so stated the position of the defendants, the Leggetts, and no exception was taken to this portion of the charge, nor any claim made that they occupied any other or different position as to the cheese in this respect. By taking this position, the Messrs. Leggett are estopped from claiming title by virtue of a sale to them by the plaintiff, and the plaintiff was the owner of the cheese, unless he had sold it to Messrs. G. W. Morgan & Co., as the defendants claimed.

The question whether there was a sale to George W. Morgan & Co. was fairly submitted to the jury, and they found adversly to the defendants. There was much testimony to support the verdict. The plaintiff had never negotiated with Morgan & Co., and there is no evidence that he had knowledge of the existence of that firm, or that he intended to make a contract with them. They were at the time insolvent, and their business was substantially closed, and as this question was found adversely to the defendants, it follows that there was no sale to Morgan & Co., and as the Messrs. Leggett repudiated the sale, that the property belonged to the plaintiff, and he had a right to demand and to take possession of the same.

The question whether the sale was made upon condition that the money should be paid upon delivery of the cheese, or whether a credit was given to Andrews, was also submitted to the jury. There was evidence showing that the plaintiff did not intend to part with the possession or the title to the cheese until the money was paid. Andrews had represented that the money was on the way from the defendants, the Messrs. Leggett in New York, at the time when the shipment was made. This representation was untrue in point of fact. The evidence shows that nothing had been

said on the subject of credit; that when on former occasions sales of a similar character were made to the defendants, no credit had been given or solicited. The plaintiff certainly had strong ground for believing that the money was to be forthcoming, and the question whether a credit was given, if it was in the case, was one for the jury, and not entirely a question of law.

But even if there was error in reference to the point considered, as to whether the sale of the property was upon condition that the money should be paid upon its delivery, it is a complete answer to the point last considered, that as the defendants, the Messrs. Leggett, denied that any sale or delivery whatever was made to them, and rested their defense upon an alleged sale to George W. Morgan & Co., under which they claimed title, and as upon the whole facts independent of the question of credit, the plaintiff was entitled to recover, the condition of the sale was not material, and the judgment would not be affected thereby. If, as last stated, the plaintiff was entitled to recover as the case stood, then the judge was right in refusing to charge the jury as requested : that if they found that the sale was made to Andrews and the Messrs. Leggett, that the title passed on delivery. The judge declined to do this, or to change his charge as made, because there was some evidence to establish that the delivery was obtained by fraud. The judge had charged the jury, that if the plaintiff was induced to let the cheese go by the fraud of Andrews, and if the delivery was obtained by fraud, then the plaintiff might rescind the effect of that delivery, pursue the property, and reclaim it from the vendees or purchasers. There was evidence tending to show a preconceived design to obtain possession of the cheese without paying for it, and that a fraud was intended, and no exception was taken to this portion of the charge, and the request last stated might very properly be refused upon this ground.

The defendants, the Messrs. Leggett, claim that they had sold and delivered the cheese to one Seabury, a *bona fide*

purchaser, without notice or knowledge of the plaintiff's claim, and therefore they are not liable in this action. It is true, that they had advised Seabury that they had purchased the cheese for him. The evidence fails to show, however, that the possession had been delivered, or the title had been transferred to Seabury. The cheese had been deposited in a warehouse which contained other cheese which belonged to Seabury, and the receipt for the same, and the insurance was in the name of the defendants. It also appears that the purchase was not entered in the books of the Messrs. Leggett, until after the demand by the plaintiff, and Seabury had not paid any money on account of the cheese. Besides, after the cheese had been replevied by the plaintiff, the defendants retook the property upon executing the security required by law, thus claiming a right and assuming to own the same, and to retain the possession thereof. Under such circumstances, as there is no ground for insisting that Seabury had possession or control of the cheese, and that the defendants had no claim thereto when the action was instituted, nor any ground for holding that the defendants, the Leggetts, had acquired a lien for an advance of $5,000 upon the cheese in question to George W. Morgan & Co. At the time of the alleged advance, and according to the finding of the jury, the plaintiff had not sold or intended to sell the property to George W. Morgan & Co., or delivered the same to Andrews on their account, or delivered it to them. He had no knowledge, nor did he consent that the receipts should be taken in the name of Morgan & Co., and Andrews obtained them from the station agent fraudulently, not because Morgan & Co. were the owners, but under the false pretext that this firm had a special contract with the railroad company in regard to freight, and Messrs. Morgan & Co., were wrong-doers in assuming any right or exercising any control over the freight. The Leggetts, at the time of the pretended advance, had no bill of lading or receipt, and advanced no money on the strength of any instrument.

The "Factor's act" (2 R. S. [5th ed.], 76), has no appli-

cation to any such case as is here presented. It only applies when the shipment is made with the consent of the real owner, in the name of another. (*M. & T. Bank of Buffalo* v. *F. & M. N. Bank of Buffalo*, 60 N. Y., 52; *Newland* v. *Woodruff*, id., 73.) It is the consent of the owner in intrusting his goods to, and allowing a bill of lading in the name of another, thus conferring ostensible ownership and a right of control in the person named, which shields parties entirely innocent, who, on the faith of the evidence furnished, to which the owner has consented, and of which he has knowledge, have made advances on the property shipped. The act was not intended to deprive actual owners who had not parted with their title, or who by fraud and without any fault on their part, had lost control over it. This act has nothing to do with a case where property has been wrongfully taken from the possession of one, and then is fraudulently appropriated.

It may also be remarked that the Messrs. Leggett did not send the money on the faith of a receipt given in the name of Morgan & Co., or upon any papers made out relating to the cheese, but upon a dispatch from that firm sent before the cheese was shipped. They, therefore, have no ground for claiming that they obtained a lien under the act referred to. Nor can said lien be upheld where the possession or title has not been parted with by the owner. The defendants were entitled to no deduction on account of the freight. As the defendants wrongfully exercised control over the cheese, the money paid for freight cannot be recovered back. (*Silsbury* v. *McCoon*, 3 N. Y., 379.) Nor does the evidence show that the value was enhanced, and that the cheese was worth more in New York than at Darien, where it was shipped. The defendants also set up a lien for freight, but as the cheese was shipped without plaintiff's knowledge or consent in the name of Messrs. Morgan & Co., it was not apparent upon what ground such a lien can be maintained.

The objection to the evidence of the plaintiff, to the effect that he did not intend to deliver the cheese to the defendants,

without payment of the purchase-price, becomes unimportant in view of the charge of the judge, which submitted to the jury the question whether there was a sale of the cheese to Messrs. Morgan & Co. Upon this question the case mainly turned, and if the testimony was erroneously received, it could not prejudice the defendants' rights.

We discover no errors in any of the rulings upon the trial, and the judgment must be affirmed.

All concur

Judgment affirmed.