80 331
91 225

80 331
99 580

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## MOORE v. STEELMAN.·

### MARCH 19TH, 1885.

1. EQUITY JURISDICTION AND RELIEF—*Remedy at Law.*—Where there are conflicting claims to personal property, possessing no *pretium affectionis*, the remedy is adequate at law, and equity will not take cognizance of the case, though one of the parties be a trustee, claiming the property under a trust deed. *Sheppards* v. *Turpin*, 3 Gratt. 357.

2. IDEM—*Injunction—Irreparable Injury.*—Where irreparable injury is imminent, against which there is no adequate protection at law and which is not compensable in damages, equity will take jurisdiction by injunction. The bill must set up the facts which exhibit the imminence and irreparableness of the injury.

3. IDEM — *Injunction*— *Dissolution.* — Where the answer denies all the grounds of equity set up in the bill, and those grounds are unsustained by proof, the injunction must necessarily be dissolved. *Hogan* v. *Duke*, 20 Gratt. 344.

Appeal from decree of circuit court of Chesterfield county, entered March 3rd, 1883, in the cause of J. S. Moore and J. M. Gregory, trustee, against Jeremiah Steelman and others.

In October, 1881, David E. Porter, by writing, sold to Steelman ten thousand cords of wood, to be cut in said county and delivered by a certain time on the Brighthope railroad, and there ricked for measurement and receipt, and to be paid for when so received. Steelman had advanced $5,000 on the contract. Porter became embarrassed and unable to fulfill the contract, and about the last of June, 1882, by parol contract, sold all the wood he had cut and corded in the said county, and

particularly on the Brander tract, to Steelman, in order to refund the $5,000. But by trust deed, executed June 5th, 1882, but not recorded until August 2nd, 1882, the day after Porter died, the latter conveyed the Brander tract, and all the wood cut and corded on it, to Gregory, trustee, to secure a debt of $1,500 to Moore. Steelman had no notice of this trust deed until after it was recorded; and had taken possession of the wood cut and corded on that tract, and was removing it to the railroad, when Moore and the trustee obtained an injunction. Steelman answered the bill, denying all the allegations whereon are based the alleged grounds of equity interposition, and the circuit court dissolved the injunction, and Moore and the trustee appealed.

*J. M. Gregory*, for the appellants.

*B. H. Nash*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

The real matter in controversy is in respect to the ownership of a large quantity of cord wood, cut and remaining on the tract of land in Chesterfield county, known as " Brander," and belonging to the estate of the late D. E. Porter, of said county.

The facts, briefly stated, are these: On the 14th day of October, 1881, David E. Porter and L. W. Cheatham, as partners, entered into a contract, under seal, with Jeremiah Steelman, of New York, to saw and deliver on the line of the Brighthope railway, not above Winterpock, to the said Steelman, *ten thousand or more* cords of first class pine wood, with certain specifications as to size and quality; the wood to be delivered ricked on the line of said railway by the 31st day of December, 1882; and when delivered, ricked as aforesaid, to be measured and received by Steelman or his authorized agent, as stipulated in the contract, and to be paid for as received and removed, at the rate

of two dollars and fifty cents per cord, by drafts of said Steelman or his authorized agents, payable thirty days after sight. And the contract sets forth, that: "The party of the second part having made an advance of five thousand dollars on the above wood, it is agreed that the above advance shall *constitute a lien* on all the wood cut by the parties of the first part until said contract is filled." It was further stipulated, that all of said wood should be sawed before the 10th day of May, 1882. There are other stipulations contained in the contract which are not material to the question in hand, and need not be here referred to.

Under this contract (Cheatham having disclaimed any interest therein, and having been relieved therefrom,) Porter proceeded to cut and put in pens large quantities of wood on the tract of land owned by him, called "Brander," and on an adjacent tract, of which he was part owner, and on other tracts in said county where he purchased the privilege of cutting wood. It does not distinctly appear how much wood in all was cut by Porter under this contract, but the fair inference is, that as late as the last of June, 1882, the quantity was much less than the 10,000 cords stipulated for in the contract. At this period (the last of June, 1882,) Porter found himself financially embarrassed and unable to fulfill his contract with Steelman, so he approached Geo. E. Robertson, the duly authorized agent of Steelman in this and other wood contracts in that section, and admitting that he had no money, and could not deliver the wood according to his contract, but expressing the desire on his part to pay back to Steelman the $5,000 advanced to him by the latter, proposed to sell to Steelman the wood cut on the Brander tract, saying at the time that the wood on the other tracts was encumbered, so that he could not sell and deliver it where it was in the forest, as he proposed to do in respect to that on the Brander tract. . Thereupon, as agent, Robertson, at the request of Porter, purchased the wood on the Brander tract for his principal; the agreement being, that Steelman, or Robertson for

him, should take possession of the wood as it was, on said Bran-
der tract, haul it to said railway, ship and market it, and apply
the net proceeds to the amount due from Porter to Steelman, it
appearing that Porter had become indebted to Steelman in a
sum considerably in excess of the $5,000 advanced on said
original contract. Under this new contract, Robertson, as agent
for Steelman, was, by Porter, put in possession of said wood so
situated, and at once commenced hauling and shipping, and
openly continued to haul and ship said wood without objection
or interruption from any source until after the death of Porter,
which occurred on the 4th day of August, 1882, when he was
enjoined and restrained from so doing until the further order of
the circuit court of Chesterfield county.

This proceeding was had under these circumstances:

It seems that on the 5th day of June, 1882, D. E. Porter ex-
ecuted to James M. Gregory, trustee, a deed conveying, with
other property, the said Brander tract of land, with all the wood
then or thereafter to be cut on same, in trust, to secure to J. S.
Moore, of Richmond, a debt of $1,500, due by note of even date
with said trust deed, and payable on demand. This trust deed
was admitted to record in Chesterfield county, on the 5th day
of August, 1882, the day after the death of Porter. Steelman
denies any notice of the execution of this deed at the time of
his purchase of the wood in question, and there is in the record
nothing to show that he had any notice of its existence until
the recordation thereof.

On the 2d day of December, 1882, said trustee, J. M. Greg-
ory, and the beneficiary in said trust deed, J. S. Moore, pre-
sented to the Hon. Edw. H. Fitzhugh, judge of the chancery
court of the city of Richmond, their bill, setting forth their
case, and praying for an order to restrain the said Steelman and
his agent, the said Robertson, and all other persons acting under
their authority, or the authority of either of them, from remov-
ing, disposing of, or in any manner interfering with the cord
wood on the Brander tract of land, or which has been carried

therefrom to the Brighthope railroad since the 5th day of June, 1882.

The injunction was granted by Judge Fitzhugh, according to the prayer of the bill. From the answer of Steelman, in the record, it seems there was a previous injunction granted by the judge of the circuit court of Chesterfield, which on motion had been dissolved prior to the injunction awarded by Judge Fitzhugh. In their bill, the complainants set out said trust deed, and assert their right to the cord-wood on the Brander tract of land at the date of said trust deed, June 5, 1882, and allege the due appointment and qualification of Fannie L. Porter, as administratrix of said D. E. Porter, dec'd; that at the time of the execution of said trust deed, there was upon the said Brander tract of land about 3,000 cords of wood belonging to and in the possession of said D. E. Porter, and was part of the wood conveyed by said trust deed, and that there is no cord-wood on said tract other than what was conveyed by said trust deed; that the said trustee has been called upon to execute said trust, as required by the terms of the deed, and is informed, believes and charges, that Geo. E. Robertson, as agent of said Steelman, is removing said wood from said Brander tract, and shipping same to Steelman, in New York, contrary to the rights of complainants under said trust deed; and that complainants are informed that Steelman and his said agent are pretending that said Steelman purchased said cord-wood from D. E. Porter in his lifetime, and therefore owns the same. The bill further alleges, that the said Steelman acquired no title to or property in said wood, or any part thereof, by reason of said purchase, or any purchase made by him of said Porter during his lifetime, and that the title thereto is in the said trustee; that the cord-wood remaining on the Brander tract at the death of Porter, is far more than sufficient to pay off and discharge the claim of said Steelman; and that he has no right to disturb, remove or appropriate the entire lot of wood, or even any part thereof, until the rights and interests of complainants and said Steelman have been adjudi-

cated by a court of equity; that it is not competent for the trustee to decide between contending parties and pass upon their rights in respect to the property in dispute, but that such is the proper prerogative of a court of equity; that the trustee cannot sell said cord-wood, as required by the trust deed, to proper advantage, while the said Steelman is claiming and removing same under color of said pretended purchase, by reason whereof they say, "the rights and interests conveyed and conferred by said trust deed, are being subjected to irreparable damage and injury." The bill does not allege that Steelman or his agent, Robertson, had notice of said trust deed at the time of the alleged purchase of the wood in question by Steelman, or at any time prior to the recordation thereof, but, speaking in the present tense, long after the recordation of the deed, uses this language: "Your orators further allege, that the said Jeremiah Steelman, and G. E. Robertson, his agent as aforesaid, *have* full and complete notice of the title of the trustee to the said cord-wood, and *having* such notice, they act in total disregard thereof." And further alleging that they are without remedy, save in a court of equity, the complainants pray that Fannie L. Porter, adm'x of D. E. Porter, dec'd, Jeremiah Steelman, and G. E. Robertson in his own right, and also as agent of said Steelman, be made parties defendant to their bill, and be required to answer the same on oath, as if interrogated in open court, to each and every allegation contained therein, and to show what title or interest, if any, they (doubtless meaning Steelman and Robertson) have to the said cord-wood, and when and how the same was acquired, and what consideration, if any, and to whom, how and when, was the same paid; and for the injunction awarded as aforesaid, and for general relief.

Robertson demurred to the bill, and disclaimed any interest in the subject of controversy.

Steelman demurred to the bill, and answered the same promptly, and gave notice that he would move on a day named to dissolve the injunction.

In his answer Steelman sets out substantially his original contract (before referred to) with Porter and Cheatham to deliver said large quantity of cord wood, a copy of which contract he files as an exhibit with his answer, and alleges, that for the cord wood to be cut and delivered under said contract, he advanced to Porter $5,000; that said contract on its face appears to have been made with Porter and Cheatham, but that Porter was the real party interested, Cheatham disclaiming any connection with the contract, was released from it by respondent, with the consent and approbation of Porter; that Porter proceeded with the money advanced by the respondent to cut a quantity of cord wood, in several places in the county of Chesterfield, and especially on the farm owned by him, called the "Brander tract"; that said Porter had cut and corded on said tract about 2,300 cords of pine wood; that in the latter part of June, 1882, said Porter, finding himself unable to haul the wood he had contracted to deliver, and desirous of paying back the said $5,000 advanced him by respondent, proposed to respondent, through his duly constituted agent, Geo. E. Robertson, that respondent should take the wood then cut and corded on the Brander tract, haul, transport and ship the same to New York, and sell the same, and apply the proceeds to the payment of the said sum of $5,000, as far as it would go in payment thereof; that respondent accepted the proposition, and did then and there, in the lifetime of said Porter, take possession of said cord wood, and was in full possession of same (as completely as one could take possession of such a bulky article as cord wood), and was hauling and shipping the same during the lifetime of said Porter and after his death, until arrested therein by an injunction, which was subsequently, to wit, on the 11th day of November, 1882, dissolved by the Hon. S. S. Weisiger, judge of the circuit court of Chesterfield; that since that time, respondent has again been hauling and shipping said wood, until stopped by the injunction order granted by the Hon. E. II. Fitzhugh, on the 2nd of December, 1882; and that

respondent was put in possession of said cord wood by D. E. Porter in his lifetime, and that his possession of and right of property therein was never questioned or disputed until after Porter's death.

Respondent, in his answer, then calls attention to the fact that said deed of trust, which bears date June the 5th, 1882, was not recorded until the 5th day of August, 1882, the day after the death of said Porter, the grantor. And in response to the bill, the respondent denies that he or his said agent had any knowledge of said deed of trust, or of any claim on said wood by J. S. Moore, or by said trustee, Gregory, or any one else, until the 5th day of August, 1882, when for the first time the deed was admitted to record; says it is true, as alleged in the complainants' bill, that his agent, Robertson, was removing and shipping said wood to respondent in New York, but insists upon his ownership of the wood, and his right to ship and market it; denies the statement in the bill that he has no title and right to said wood; denies also the statement that the cord wood remaining on the Brander tract at the death of said Porter is more than enough to pay off his claim on the amount advanced to Porter, and says the amount of wood so remaining on said tract was about 1900 or 2000 cords, which, in the woods, was worth about $1.65 per cord, which would make a sum far less than $5,000; and, directly in response to the bill, shows how he acquired title to the wood, and how the same was paid for, by filing with his answer five drafts drawn on respondent by Porter and Cheatham, and paid by respondent in accordance with the provisions of said contract of the 14th day of October, 1881. In short, the answer separately and in detail denies in the most direct and emphatic terms, each and every allegation in the bill touching respondent Steelman's right to said wood; and respondent insists that a court of equity cannot undertake, in a case like this, to pass upon the rights of property between conflicting claimants, which is peculiarly the province of a court of law.

According to notice, the motion to dissolve the injunction came on and was heard, in vacation, on the 3rd day of March, 1883, on the complainant's bill and the demurrer thereto of Geo. E. Robertson and joinder therein, the answer of Jeremiah Steelman and exhibits filed therewith, and the affidavit of Geo. E. Robertson, filed by the defendant Steelman in support of his motion to dissolve, when the judge of the circuit court of Chesterfield sustained the demurrer of Geo. E. Robertson and dismissed the bill as to him; and for reasons appearing to the court, it was adjudged, ordered and decreed, that the injunction theretofore awarded in this cause, on the 2nd day of December, 1882, be dissolved, and that said Jeremiah Steelman recover of the said plaintiffs his costs, &c. From that decree, dissolving said injunction, the case is here on appeal.

I. It is clear that a court of equity has no jurisdiction of the case as made by the bill. Personal property, a lot of cord wood, as to which there are conflicting claimants, is the subject of controversy. For the settlement of such a question a court of law is the peculiarly appropriate tribunal. The plaintiffs claim the subject of controversy under a trust deed executed by Porter in his lifetime, but not recorded until after his death; and in the bill it is stated that the defendant, Steelman, claims the same subject under a purchase by him from Porter during his lifetime; and the bill, though styling Steelman's claim a pretended one, does not charge that Steelman had notice of the unrecorded trust deed at the time of his alleged purchase, or at any time during Porter's life, and prior to the recordation of said trust deed. There is thus presented by the bill, a case of conflicting claims to personal property, as to which the remedy at law is complete.

In 1 Barton's Chy. Pr. 430, it is said, "As the general jurisdiction of courts of chancery is founded in a lack of remedy in the courts of law, so especially is relief given by means of injunctions, because there is none, or no adequate remedy at law, and because compensation by way of damages will not be suffi-

cient to restore the party to his rights, or to replace the wrong that may be done to him. It will be found upon careful investigation, that all the grounds upon which the right to an injunction rests, are traceable to this general rule of preventing irreparable wrong or mischief." See also Minor's Inst., vol. 4, pt. 1, p. 7, 109, 133, 473; Story's Eq. Juris. § 921, *et seq.; Irwin* v. *Dixon*, 9 How. 10; *Bowyer* v. *Creigh*, 3 Rand. 32; *Coulter* v. *Hunter*, 4 Rand. 58; Adams' Eq. 210.

The bill in this case, in a general way, alleges, among other things, that Steelman's actings and doings in respect to the subject of litigation will result in irreparable damage and injury to the plaintiffs. This is not enough. There must be something peculiar in the case, so as to bring the injunction under the head of quieting possession or preventing irreparable mischief. *Livingston* v. *Livingston*, 6 Johns. Chy. R. 497. The bill here makes no such case. Moreover, the facts which show the irreparable nature of the injury must be set out in the bill, a mere general averment is not sufficient. *Chesapeake & Ohio Co.* v. *Young*, 3 Md. 480. The injury complained of must be such that it is not susceptible of compensation in damages at law. *Jerome* v. *Ross*, 7 Johns. Chy. R. 315; *Hawley* v. *Clowes*, 2 Johns. Chy. 122. Here, unquestionably, a case is stated by the bill, in respect to which there is no obstruction to the remedy at law, which is ample. Indeed, nothing to the contrary is suggested; and it would seem that the bill itself is a sufficient refutation of the claim to equitable jurisdiction relied on in the argument.

II. It necessarily follows that the injunction was properly dissolved. The settled doctrine is, that where a motion to dissolve is on the bill and answer, and the answer denies all the equity of the bill, the injunction is dissolved, of course, except when from the bill and answer, special reasons may appear for continuance. 1 Barton's Chy. Pr. 414; *Hoffman* v. *Livingston*, 1 Johns. Chy. R. 211; *Mintun* v. *Seymore*, 4 Johns. Chy. R. 497; *Hayzlitt* v. *McWilliam*, 11 West Va. 464; *Deloney* v. *Hut-*

*cheson*, 2 Rand. 183; *North's Ex'r* v. *Perron*, 4 Rand. 1; *Hogan* v. *Duke*, 20 Gratt. 244.

Here, the answer of Steelman, in the most explicit and direct terms, denies each and every material allegation in the bill, and the plaintiffs utterly fail to sustain their bill by any relevant auxiliary evidence. Under the well settled law, no course was left open to the court but to dissolve the injunction. On the other hand, on the motion to dissolve, Steelman introduced the affidavit of Geo. E. Robertson, which, to the fullest extent, sustains said answer. This affidavit is for the first time objected to here, on the ground that the affiant was the agent of Steelman, and made the purchase of the wood relied on by Steelman, and that he was thus a party to the *transaction*, and not competent to testify, Porter, the other party, being dead. It is obviously unnecessary to decide this question, as, independent of this affidavit, the injunction was properly dissolved.

In any and every view of the case, we are of opinion that the decree appealed from is plainly right and must be affirmed, with costs to the appellee Steelman.

DECREE AFFIRMED.