## BROOKS v. TYNER *et al.*

No. 1872.  Opinion Filed March 11, 1913.

Rehearing Denied June 10, 1913.

(132 Pac. 683.)

1. INJUNCTION—Grounds—Title to Chattels—Replevin.  The general rule is that when the title to personal property of ordinary character is in dispute, and the title asserted by the respective parties is a strictly legal title, the remedy of the party out of possession is at law, by an action of replevin, and he cannot maintain a suit in equity to establish his ownership.

2. APPEAL AND ERROR—Theory in Lower Court—Nature of Action.  Where the pleadings in an action join issue as to the title to personal property and also set up facts sufficient to confer jurisdiction upon a court of equity, and the parties without objection thereafter treat the proceeding as an action at law and go to trial upon the question of title, and the court finds upon that question and renders judgment thereon, on appeal the cause will be treated as an action at law by the Supreme Court.

3. SALES—Validity—Subsequent Purchaser. Section 2933, Comp. Laws 1909 (Rev. Laws 1910, sec. 2897), applies where there is a transfer of the title to personal property by the owner to another who permits the vendor or transferor to remain in possession, and not where there is a mere executory agreement to sell, and the subsequent purchaser in good faith, against whom the transfer is presumed to be fraudulent and void, must be a

purchaser and not one who has merely entered into an executory contract to purchase.

4. SAME—"Sale"—"Executory Agreement to Sell." In a sale the thing which is the subject of the contract becomes the property of the buyer the moment the contract is concluded and without regard to the fact whether the goods be delivered to the buyer or remain in possession of the seller; whereas in an executory agreement the goods remain the property of the seller until the contract is executed.

5. APPEAL AND ERROR—Theory of Case. In the case at bar, however, it is conceded that the contract of the plaintiff in error was executory, and that is the status which must be accorded to it in this court.

6. SALES—Executory Contract—Effect—Title. Under such a contract until the act is performed, or the condition fulfilled which is necessary to convert the executory into an executed contract, no title passes to the buyer as against the seller or persons claiming under him.

7. SAME—Title of Plaintiff—Purchaser—Executory Contract. In the case of an executory agreement as the proposed purchaser does not become the owner of the goods he cannot claim them specifically; he is not the sufferer if they are lost and cannot maintain trover for them, and has at common law no other remedy for the breach of the contract than an action for damages.

8. SAME—Perfecting Contract. After an executory contract has been made, it may be converted into a complete bargain and sale by specifying the goods to which the contract is to attach, or, in legal phrase, by the appropriation of specific goods to the contract. The sole element deficient in a perfect sale is thus supplied. The contract has been made in two successive stages instead of being completed at one time, but is none the less one contract, viz., a bargain; and sale[ of goods. The selection of the goods by one party and the adoption of that act by the other converts that which was before a mere agreement to sell into an actual sale, and the property thereby passes.

9. SAME—Separation and Appropriation—Sufficiency. Where the portion of the mass or lot which is the subject of the contract is designated in such a manner as to make it easily distinguishable from that with which it is mixed, no other separation or appropriation is necessary to render the contract complete and to pass the title.

10. SAME—Delivery Without Separation—Sufficiency. The delivery of the whole mass to the purchaser, for the purpose of enabling him to separate the part sold, passes title of that part before actual separation has been made.

11.  SAME—Action by Purchaser—Completion of Sale—Sufficiency
     of Evidence. Evidence examined, and held sufficient to sup-
     port the judgment rendered by the court below. ·
     (Syllabus by the Court.)

Dunn, J., dissenting.

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by John L. Brooks against E. Tyner and another.
Judgment for defendants, and plaintiff brings error. Affirmed.

*William T. Hutchins* and *William P. Z. German* (*Robt.*
*F. Blair,* of counsel), for plaintiff in error.
*Murphey & Noffsinger,* for defendant in error.

KANE, J.  This proceeding was commenced as a suit
in equity by the plaintiff in error, plaintiff below, against
the defendants in error, defendants below, for the purpose of
enjoining the defendants from removing 500 tons of baled
prairie hay from a barn at Eram, Okla., belonging to E.
Tyner, one of the defendants. It seems that Tyner was en-
gaged in cutting and bailing hay in the Creek Nation, and
that Brooks and Martin were dealers in that commodity; that
during the early part of the season of 1909, Brooks and Mar-
tin made independent contracts with Tyner for the purchase
of a large quantity of hay (2,000 tons and 500 tons, re-
spectively), which Tyner was to cut, bale, and put in de-
liverable condition. Tyner did not put up sufficient hay
to fill both contracts, or at least there was not enough in
sight for that purpose at the time this suit was commenced,
and upon Martin attempting to ship the 500 tons provided for
by his contract, which in the meantime Tyner had cut, baled,
and stored with other baled hay, Brooks commenced this pro-
ceeding, basing his right upon the theory that as his con-
tract was subsequent in date to the contract of Martin and
there was not hay enough to fill both contracts, nor indeed
enough to fill his alone, he was entitled to the whole mass un-

der section 2933, Comp. Laws 1909 (Rev. Laws 1910, sec. 2897), which provides:

"Every transfer of personal property other than a thing in action * * * is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent and therefore void, against those who are his creditors while he remains in possession, and the successors in interest of such creditors, and against any person on whom his estate devolves in trust for the benefit of others than himself, and against purchasers or incumbrancers in good faith subsequent to the transfer."

Brooks based his right to equitable relief upon the ground that, his contract being executory, he could not maintain replevin or trover, and as Tyner and Martin were insolvent, an action for damages for breach of contract would be unavailing; therefore, if Martin was permitted to ship out the 500 tons claimed by him, he (Brooks) would suffer irreparable injury. Upon trial to the court a temporary restraining order, which had theretofore been issued, was dissolved, and the cause without objection treated as an action at law. After a full hearing the court held that Martin was entitled to the 500 tons of hay purchased by him, and entered judgment accordingly, to reverse which this proceeding in error was commenced.

The questions for review presented by the record are: (1) That the bill of the plaintiff is without equity, for the reason that the title to the property is the principal question at issue, and that injunction will not lie to try title to personal property alone. (2) Error of the court in rendering judgment in favor of Martin for the 500 tons of hay claimed by him.

It is true that the general rule is that when the title to personal property of ordinary character is in dispute, and the title asserted by the respective parties is a strictly legal title, the remedy of the party out of possession is at law by

an action of replevin, and he cannot maintain a suit in equity to establish his ownership. *Jones et al. v. Mackenzie et al.*, 122 Fed. 390, 58 C. C. A. 96; High on Injunction (3d Ed.) sec. 28; *Moore v. Steelman,* 80 Va. 331; *Winkler v. Winkler,* 40 Ill. 179; 22 Cyc. 859.

It is not necessary to decide whether the facts in this case constitute it an exception to the general rule, for the reason that the pleadings clearly join issue on the question of title, and the parties without objection went to trial on that issue, and the judgment rendered by the court is confined to that question, and is therefore purely legal in its nature. In this jurisdiction the distinction between actions at law and suits in equity is abolished by statute; all that is required of a plaintiff is that he shall state the facts constituting his cause of action in plain and concise language, and without repetition. That was done in the instant case, and whilst equitable relief is prayed for, the conduct of the parties themselves and the action of the court stripped the cause of all of its equitable features and left it purely an action at law. Where the pleadings in an action join issue as to the title to personal property and also set up facts sufficient to confer jurisdiction upon a court of equity, and the parties without objection thereafter treat the proceeding as an action at law and go to trial upon the question of title, and the court finds upon that question and renders judgment thereon, on appeal the cause will be treated as an action at law by the Supreme Court.

The question that remains, Is the judgment of the court below erroneous? We think it is not. Counsel for plaintiff admit that his contract is executory, the court below found it to be so, and it must be so treated in this court. The error counsel have fallen into is in assuming that by virtue of the executory contract of their client he is entitled to protection as a subsequent purchaser in good faith under section 2933, *supra.* The statute applies where there is a transfer of the title to personal property by the owner to another

who permits the vendor or transferor to remain in possession, and not where there is a mere executory agreement to sell and the subsequent purchaser in good faith, against whom the transfer is presumed to be fraudulent and void, must be a purchaser and not one who has merely entered into an executory contract to purchase. 35 Cyc. 345.

"In order to render one a purchaser it is necessary that he acquire the legal title or a legal interest in the property; it is insufficient that he has acquired an equitable interest in the property, and therefore to constitute one a purchaser for value, the sale to him must have been completed by a delivery." (24 Enc. of L. 1169; *Defiance Machine Works v. Trisler,* 21 Mo. App. 69; *Anketel v. Converse et al.,* 17 Ohio St. 11, 91 Am. Dec. 115; *Beavers v. Lane et al.,* 6 Duer [N. Y.] 232; *Kinsey v. Leggett,* 71 N. Y. 387.)

The distinction between an actual sale and a mere executory agreement to sell is quite marked. In a sale the thing which is the subject of the contract becomes the property of the buyer the moment the contract is concluded, and without regard to the fact whether the goods be delivered to the buyer or remain in possession of the seller; whereas, in an executory agreement the goods remain the property of the seller until the contract is executed. This distinction is of importance in two connections: First, as between the parties to the contract, in order to determine upon whom the loss shall fall in case the property is destroyed; and, second, in order to know what rights creditors or subsequent purchasers of one party may acquire as against the other. 24 Am. & Eng. Enc. of L. pp. 1045-1047; *Fosdick v. Schall,* 99 U. S. 235, 25 L. Ed. 339; *Ricker et al. v. Cross,* 5 N. H. 570, 22 Am. Dec. 480; *Hurff v. Hires,* 40 N. J. Law, 581, 29 Am. Rep. 282; *Golder v. Ogden,* 15 Pa. 528, 53 Am. Dec. 618.

The rule is that, if under a contract for the sale of specific goods, the seller is bound to do something to the goods for the purpose of putting them in a deliverable state, that is, into a condition in which the buyer is bound to accept them, unless a different intention appears, the property does

not pass until such thing is done; as where trees are to be trimmed, cotton to be ginned and baled, fish to be dried, crops to be gathered or threshed, cattle to be fattened, hops to be baled, machinery to be set up, or lumber to be sawed or planed, the doing of such thing is presumptively a condition precedent to the transfer of property. *Acraman v. Morrice,* 8 C. B. 449; *Screws v. Roach,* 22 Ala. 675; *Foster v. Ropes.* 111 Mass. 10; *Blackwood v. Cutting Packing Co.,* 76 Cal. 212, 18 Pac. 248, 9 Am. St. Rep. 199; *Low v. Freeman,* 12 Ill. 467; *Hughes v. Wiley,* 36 Kan. 731, 14 Pac. 269; *Fairbanks v. Richardson Drug Co.,* 42 Mo. App. 262; *Chambers v. Austin,* 57 App. Div. 359, 68 N. Y. Supp. 53; *Cooper v. Bumpass,* 1 White & W. Civ. Cas. Ct. App. sec. 498.

In the case at bar, however, it is conceded that the contract of the plaintiff in error is executory, and that is the status which must be accorded to it in this court. Under such a contract until the act is performed, or the condition fulfilled, which is necessary to convert the executory into an executed contract, no title passes to the buyer as against the seller or persons claiming under him. 35 Cyc. 275. It seems quite clear that at the outset the contracts of both Brooks and Martin amounted to no more than mere executory agreements to purchase, and if this condition had remained unchanged up to the time of the commencement of this action, their equities being equal, the remedy of each would have been an action for damages for breach of contract against Tyner. But there was evidence strongly tending to show that before the commencement of this suit the executory contract of Martin had been converted into a complete bargain and sale. In the case of an executory agreement as the proposed purchaser does not become the owner of the goods he cannot claim them specifically; he is not the sufferer if they are lost, cannot maintain trover for them, and has at common law no other remedy for the breach of the contract than an action for damages. 1 Benj. on Sales, sec. 308; *Hatch v. Oil Co.,* 100 U. S. 124, 25 L. Ed. 554.

The record shows that Martin, after the execution of his contract, made arrangements to sell the hay provided for therein to the Doggett Grain Company, whereupon he called upon Mr. Tyner and told him that he had sold the hay, and that he would like a bill of sale therefor; that in pursuance of this request Mr. Tyner executed a bill of sale to Mr. Martin, whereupon, Mr. Martin paid for the hay and had the same insured in his own name. That up to this time all the hay put up by Tyner over which this controversy arose was stored in his barn at Eram. On the question of reducing to possession the quantity of hay contracted for by him, Mr. Martin testified as follows:

"Q. When did you go out to that barn to get the possession and move out that hay? A. On February 21, 1910. Q. What did you do afterwards towards taking possession of the hay and shipping it out—taking physical possession of it? A. I sold it to the Doggett Grain Company, and then gave my instructions to ship out ten cars of it. I went to Council Hill and told Mr. Tyner that I had to ship it out. He said that he was sick, and could not go over there, but gave me an order to Mr. Blake. I found Mr. Blake in possession of the hay on the evening of the 21st of February, and there was no team available to load that hay on that day. I left Mr. John Aukley and Mr. Gribbell to attend to the loading of the hay, and told them to load out about ten cars of it. Q. Were you at Eram on the 21st or 22d of February? A. I was. Q. What did you do about this hay at that time? A. I went to Eram and had an order from Mr. Tyner to Mr. Blake to turn over this hay to me. Mr. Blake, who had charge of this hay, turned it over to me, and said there it was and told me that he would see to the loading out of it, and we began loading it out on about, I think, the next day. Q. On the 21st. I understand you to say that you did go down and take possession of this hay from Mr. Tyner? A. Yes, sir; on the 21st of February. Q. For what purpose? A. Loading it out for the Doggett Grain Company. Q. I will show you this paper marked 'Plaintiff's Exhibit C'—'Defendant's Exhibit C,' and will ask you to state if that is the order under which you took possession of the hay on the 21st of February, last? A. Yes, sir; it is."

Exhibit "C" read as follows:

"Council Hill, Okla., 2/21, 1910. Mr. John Blake, Eram, Okla. Dear Sir: You will please deliver to Mr. Gribbell for the Doggett Grain Co. of McKinney, Tex., 500 tons of hay in the barn at Eram, 300 tons of hay in east shed and balance on west side of barn. This is the hay I sold to J. A. Martin, Checotah, last summer, as per contract. Haul this hay as directed by Mr. Gribbell. [Signed] E. Tyner."

"Q. Why didn't you proceed to move all that hay? A. Mr. Brooks had Mr. Gribbell arrested. Q. Were you enjoined from shipping hay out? A. Yes, sir."

The rule is that:

"After an executory contract has been made, it may be converted into a complete bargain and sale by specifying the goods to which the contract is to attach or, in legal phrase, by the appropriation of specific goods to the contract. The sole element deficient in a perfect sale is thus supplied. The contract has been made in two successive stages instead of being completed at one time, but is none the less one contract, viz., a bargain and sale of goods. The selection of the goods by the one party and the adoption of that act by the other converts that which was before a mere agreement to sell into an actual sale, and the property thereby passes." (24 Am. & Eng. Enc. of L. p. 1058.)

Ordinarily, and in the absence of an agreement to the contrary, the seller is under no obligation to send or carry to the buyer the goods sold. His duty is fulfilled by so placing them at the disposal of the buyer that they can be removed by him. It has been held that where the portion of the mass or lot which is the subject of the contract is designated in such manner as to make it easily distinguishable from that with which it is mixed, no other separation or appropriation is necessary to render the contract complete and to pass the title. 24 Am. & Eng. Enc. of L. p. 1058. And that the delivery of the whole mass to the purchaser, for the purpose of enabling him to separate the part sold, passes title of that part before actual separation has been made. *Weld v. Cutler,* 2 Gray (Mass.) 195; *Iron Cliffs Co. v. Buhl,* 42 Mich. 86, 3 N. W. 269; *Lamprey v. Sargent,* 58 N. H.

241; *Page v. Carpenter*, 10 N. H. 77; *Brewer v. Salisbury*, 9 Barb. (N. Y.) 511; *Crofoot v. Bennett*, 2 N. Y. 258.

The evidence above set out, which was uncontradicted, clearly shows that the sale to Martin had become completed at the time the suit by Brooks was commenced, at which time it is admitted his contract was merely executory. That being the case, it follows that Martin was entitled to the hay covered by his contract with Tyner as found by the court below.

The judgment is therefore affirmed.

HAYES, C. J., and WILLIAMS and TURNER, JJ., concur; DUNN, J., dissenting.